IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Stephen Dewhurst,<br><br>    Plaintiff,<br><br>v.<br><br>Tom Vilsack, Secretary U.S. Department of Agriculture; Calvin Joyner, U.S. Forest Service Southwest Regional Forester,<br><br>    Defendants. | No. CV-15-08265-PCT- NVW<br><br>**ORDER** |

Before the Court is Plaintiff Dewhurst's motion for summary judgment (Doc. 15), and Defendants Vilsack and Joyner's cross-motion for summary judgment (Doc. 16).

**I. BACKGROUND**

Over the course of several years, the U.S. Forest Service, under the supervision of defendants Tom Vilsack, Secretary of the U.S. Department of Agriculture, and Calvin Joyner, U.S. Forest Services Southwestern Regional Forester, has undertaken the Four-Forest Restoration Initiative Project ("The Project"), a systematic tree restoration project targeting nearly one million acres of Arizona national forests. (Doc. 18 at 1; Doc. 6, ¶ 3; AR-116376.)[1]

Pursuant to the National Environmental Policy Act (NEPA), the Forest Service

---

[1] Citations beginning with "AR" reference the administrative record in this case.

must publish an environmental impact statement before undertaking any largescale environmental action, The Project at issue here being one such action. *See* 42 U.S.C. § 4332(2)(C). Accordingly on January 25, 2011, the Forest Service published in the Federal Register a public notice of intent to prepare an environmental impact statement for The Project. (AR-116376; 76 FR 4279-81.) For approximately two years afterward, the Forest Service received public comments and, using the feedback it received, produced a Draft Environmental Impact Statement made available for notice-and-comment on March 29, 2013. (AR-116377; Environmental Impacts Statements; Notice of Availability, 78 Fed. Reg. 19261-01 (March 29, 2013).) After receiving more than 1,000 individual comments over the formal sixty-day notice-and-comment period, the Forest Service produced a Final Environmental Impact Statement and a Draft Record of Decision, together detailing its plans for The Project. (AR-116378.) Both documents were then subject to review and objection, and the Forest Service, after receiving a total of nine objections, extended the objection period in order to reach resolutions on each one. (AR-116379.) The Forest Service conducted meetings with those who offered objections and subsequently published the Final Environmental Impact Statement, an addendum entitled "Errata and Objection Resolution Modification," and a revised Record of Decision, all of which reflect the resolution of these objections. (*Id.*)

Plaintiff Stephen Dewhurst ("Dewhurst"), a university forestry professor, has been an outspoken public participant throughout The Project's administrative review process. Among other involvement, Dewhurst submitted written comments to the Draft Environmental Impact Statement on May 29, 2013, submitted written objections to both the Final Environmental Impact Statement and Draft Record of Decision on January 20, 2015, and participated in an objection resolution meeting with the Forest Service on March 18, 2015. (Doc. 6, ¶ 2.) Through these and other interactions with Forest Service officials, Dewhurst ultimately raised several concerns he had with The Project, in particular the extent to which he believed its production violated the National

Environmental Policy Act (NEPA) and the Collaborative Forest Landscape Restoration Program (CFLRP) (which itself demands compliance with the NEPA). (*See, e.g.*, AR-035695; AR-115814.) Dewhurst has continued to maintain these concerns through the filing of this suit. (*See* Docs. 1, 15, 19.) He alleges that, because of "[t]he failure of the Defendants to ensure implementation and compliance with the law and the rules," he finds himself unable to teach his university students "how the laws and the rules are to be followed." (Doc. 15 at 8.)

On November 9, 2015, Dewhurst filed this lawsuit claiming what appear to be three separate alleged violations of law resulting in injury to him.[2] First, he claims the Forest Service violated NEPA by unilaterally inserting a change to the project's stated purpose in the Final Environmental Impact Statement's Errata and Objection Resolution Modification addendum, rather than opening up the proposed change for notice and comment. (Doc. 1 at 3-4.) Second, Dewhurst claims the Forest Service executed a Record of Decision based on what he characterizes as "an unprecedented type of document, an Environmental Impact Statement with Errata and Objection Resolution Modifications," a document he claims to be "undefined in rule, regulation, or statute." (*Id.* at 4.) And third, Dewhurst alleges that the Final Environmental Impact Statement and Record of Decision did not consider "a full range of ecological restoration alternatives." (*Id.*) Defendants filed an Answer to the complaint on February 16, 2016. (Doc. 6.)

On April 15, 2016, Dewhurst filed a motion for summary judgment. (Doc. 15.) Defendants filed a cross-motion for summary judgment on May 13, 2016. (Doc. 16.) They raise two principle arguments in support of summary judgment in their favor: first, that Dewhurst lacks standing, and second, that even if Dewhurst has standing, The

---

[2] Dewhurst's complaint is vague as to the precise number and types of violations he alleges. It should be noted from the outset that it is the plaintiff's responsibility to state all claims clearly and completely. The Court cannot be tasked with piecing together fragmented arguments or reading between the lines for claims not immediately apparent.

Project fully complies with both NEPA and the CFLRP. (Doc. 18 at 6-7.) Dewhurst filed a response on May 27, 2016. (Doc. 19.)

While it is difficult to perceive any legal defect in the Defendants' actions, the Court does not reach the issue on the merits because, for the reasons set forth below, Dewhurst lacks standing to bring this suit.

**II. Legal Standards**

As a general matter, the "irreducible constitutional minimum" of standing requires that "the plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo Inc. v. Robins*, — U.S. —, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Standing to enforce a federal law, however, only exists where Congress has created a private right of action as to that particular law. *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). Since NEPA does not include a private right of action, "plaintiffs challenging an agency action based on NEPA must do so under the Administrative Procedure Act . . . " *Ashley Creek Phosphate Co. v. Norton*, 420 F.3d 934, 939 (9th Cir. 2005). Thus, for Dewhurst to have standing to bring this suit, he must have standing under the Administrative Procedure Act (APA).

The APA grants a right of action to anyone "adversely affected or aggrieved by agency action within the meaning of a relevant statute . . . " 5 U.S.C. § 702. A plaintiff suing under the APA, however, must also "assert an interest 'arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.'" *Ranchers Cattlemen Action Legal Fund United Stockgrowers of America v. United States Dept. of Agric.*, 415 F.3d 1078, 1103 (9th Cir. 2005) (quoting *Nev. Land Action Ass'n v. United States Forest Serv.*, 8 F.3d 713, 715-16 (9th Cir. 1993)). This requirement serves "to exclude those plaintiffs whose suits are more likely to frustrate

than to further statutory objectives." *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 397 n.12 (1987). That said, the Supreme Court has clarified that in the APA context the test for whether a plaintiff falls within a statute's zone of interests "is not especially demanding." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, — U.S. —, 134 S. Ct. 1377, 1388 (2014) (internal quotation marks omitted). The test forecloses suit "only when a plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress authorized that plaintiff to sue." *Id.* (citing *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. —, 132 S. Ct. 2199, 2210 (2012))

In any case, the central purpose of NEPA is "to protect the environment, not the economic interests of those adversely affected by agency decisions." *Nev. Land Action Ass'n*, 8 F.3d at 716. Thus, to fall within NEPA's zone of interests for the purpose of standing, "a plaintiff must allege injury *to the environment* . . . " *Ranchers Cattlemen*, 415 F.3d at 1103 (emphasis added).

## III. ANALYSIS

Dewhurst has asserted here that the Forest Service's actions have "placed [him] in a state of conflict," which has "significantly harmed his ability to conduct his livelihood of explaining the laws" to his university students. (Doc. 15 at 5.) Defendants interpret this as asserting an economic injury (Doc. 18 at 10), which, if correct, would by itself be insufficient to bring him within NEPA's zone of interests. Dewhurst contends that this mischaracterizes his position (Doc. 19 at 3-4), though he does not clearly articulate what the correct characterization is.[3] Regardless, he nowhere claims that the Defendants' actions caused any actual injury to the environment. Without asserting some harm to the

---

[3] In his reply brief, Dewhurst mentions for the first time his status as a "direct user of the forests." (Doc. 19 at 3.) But because the government had no opportunity to respond, neither this nor any other arguments Dewhurst raised for the first time in his reply brief will be considered here.

- 5 -

environment from which his alleged injuries arose, Dewhurst cannot establish standing to sue under NEPA.  *See Nev. Land Action Ass'n*, 8 F.3d at 716 ("[A] NEPA claim may not be raised by a party with no claimed or apparent environmental interest.")

Dewhurst also appears to contend that he has suffered a separate harm allegedly covered by the statute, namely a procedural one.  In both his complaint and his motion for summary judgment, Dewhurst points to what he characterizes as the Forest Service's failure to address "science-based ecological restoration" in its Final Environmental Impact Statement.  (Doc. 1 at 4; Doc. 15 at 8.)  Through a series of rhetorical questions, Dewhurst implies that as a result he has been left unable to perform his job of educating students on the regulation of America's forests.  (*See* Doc. 15 at 8.)

A plaintiff does not have standing to raise "only a generally available grievance about government," one "claiming only harm to his and every citizen's interest in proper application of the Constitution and laws . . . " *Lujan*, 504 U.S. at 573.  However, where a plaintiff has been granted a procedural right to protect his concrete interests, that plaintiff "can assert that right without meeting all the normal standards for redressability and immediacy." *Lujan*, 504 U.S. at 572 n.7.  For instance, plaintiffs could potentially have standing to enforce "the procedural requirement for a hearing prior to denial of their license application, or the procedural requirement for an environmental impact statement before a federal facility is constructed next door to them." *Id.* at 572.

But there is an important difference between those examples and the case at hand.  For both the license applicant and the neighbor to a proposed federal facility, the applicable procedural requirements are intended to guard their interests in particular: a hearing requirement targets license applicants for protection against erroneous denials, just as the requirement of issuing an environmental impact statement targets for protection, among others, nearby residents at risk of adverse effects.  Whomever NEPA's procedural requirements were designed to protect, it is abundantly clear they were not designed to protect educators from having to explain agency decisions to their students.

Explaining government actions to students is precisely what educators in a variety of disciplines are tasked with doing every day—even when those actions are ones they find perplexing. To grant Dewhurst standing here would be to give each and every educator in the country standing to sue the government whenever he or she finds a government policy decision difficult to explain.

Given that the true objective of NEPA is to protect the environment, *Nev. Land Action Ass'n*, 8 F.3d at 716, limiting standing solely to those alleging environmental injuries rightly guards against "plaintiffs whose suits are more likely to frustrate than to further statutory objectives," *Clarke*, 479 U.S. at 397 n.12. NEPA simply grants no procedural right to educators, and thus the harms Dewhurst alleges here do not fall within the statute's zone of interests. Accordingly, he is without standing to sue.

IT IS THEREFORE ORDERED that Plaintiff's motion for summary judgment (Doc. 15) is denied.

IT IS FURTHER ORDERED that Defendants' Cross-Motion for Summary Judgment (Doc. 16) is granted for lack of standing.

IT IS FURTHER ORDERED that the Clerk enter judgment against Plaintiff Stephen Dewhurst and in favor of Defendants Tom Vilsack and Calvin Joyner, dismissing this action without prejudice for lack of standing and lack of jurisdiction.

The Clerk shall terminate this case.

Dated this 13th day of September, 2016.

Neil V. Wake
United States District Judge